FILED

AUG − 3 2016

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| TAION BROWN, | ) | |
| PIERRE WATSON, AND | ) | **4:16CR336 JAR/PLC** |
| JUSTICE CARTER, | ) | |
| | ) | |
| Defendants. | ) | |

**INDICTMENT**

**COUNT 1**

(Conspiracy to Commit Bank Fraud)

The Grand Jury charges that:

A.    **Introduction**

1.    The Jennings Correctional Facility is a detention facility located in the Eastern District of Missouri which houses individuals awaiting trial or other criminal procedures before the United States District Court for the Eastern District of Missouri in addition to detaining individuals on criminal matters on behalf of the State of Missouri and local municipalities.

2.    As a security measure, the Jennings Correctional Facility records telephone calls made by detainees and inmate visits.   Inmates and their guests as well as those who speak with them by telephone are warned of the monitoring.

1

3. . The Jennings Correctional Facility contracts with Securus Technologies to provide telephone service for its detainees.  In addition, Securus Technologies offers a variety of services through which the detainees' telephone services can be funded.

4. On March 20, 2016, **PIERRE WATSON**, hereinafter referred to as "**WATSON**," was detained at the Jennings Correctional Facility awaiting trial in criminal case number S3-4:15CR00440 AGF(JMB).

5. On or about March 20, 2016, E.F., another detainee of the Jennings Correctional Facility, spoke with **TAION BROWN**, a resident of St. Louis, Missouri, and suggested that she meet **WATSON**.

6. . The same day, **TAION BROWN**, hereinafter referred to as "**BROWN**," went to the correctional facility with T.M. in order to meet **WATSON**.   During that visit, **BROWN** identified herself to correction's officials as a friend on **WATSON'S** Inmate Visitor Log.  By the seventh visit on April 13, 2016, **BROWN** noted that she was his girlfriend on the visitor log.   In addition to visiting **WATSON** on her own, **BROWN** brought **WATSON'S** minor daughter with her on at least three visits between March 23, 2016 and April 27, 2016.

7. Recordings of telephone calls and jail visits between **TAION BROWN**, PIERRE **WATSON**, and others between March 25, 2016 and June 14, 2016 contain numerous conversations in which **BROWN, WATSON**, and others discuss various fraudulent schemes including check-kiting which they term as "piggybacking."   Check-kiting occurs when an individual takes advantage of the small window of time between when checks are deposited into an account, and the financial institution upon which the checks are drawn provides notice to the depositing institution that the check will not be honored.   During that small period of time,

2

individuals engaged in check-kiting will withdraw funds or make purchases from artificially inflated accounts.   Consequently, instead of being used as the negotiable instruments intended by the issuing financial institution, the checks are misused as a form of unauthorized credit.   The depositing financial institution experiences a financial loss as it has provided funds based upon the artificially inflated account.

8.      On March 25, 2016, **BROWN** opened checking accounts at the federally insured financial institutions of U.S. Bank and Bank of America by making cash deposits of $25.00.

9.      Between March 25, 2016 and May 7, 2016, **BROWN, WATSON**, and others engaged in check-kiting in order to obtain cash, and to purchase goods and services.

10.     On March 25, 2016, a corrections official at the Jennings facility noticed financial documents in **BROWN'S** possession as she prepared to meet with **WATSON**.   Unbeknownst to **BROWN**, the official photographed the items.   They included: five Regions Bank deposit receipts for accounts ending in 1868 and 5297 dated February 23, 2016 and March 18, 2016; a deposit receipt from Bank of America confirming a cash deposit of $25.00 on March 25, 2016; a U.S. Bank receipt for $25.00; a U.S. Bank account identification card; a business card of a U.S. Bank employee; a Bank of America Direct Deposit Enrollment form for an account ending in 1666 for **BROWN**; and documents relating to Power of Attorney forms for **WATSON**.

11.     On Wednesday, April 20, 2016, a Federal Inmate Violation Report was filed against **WATSON** by officials at the Jennings Correctional Facility which led to **WATSON** being placed on lockdown for two days.   Lockdown is the phrase that is used at the facility when an inmate is restricted to his cell, and his privileges are withheld.

12.     After **WATSON** had been placed on lockdown, a correctional official at the facility intercepted a note containing two separate messages that was being passed from G.M., another inmate, to a detainee who was later identified as **WATSON**.   In one of the messages, G.M. was instructed to tell an unidentified person that he loved her and that he was on lockdown until Friday. The message also told G.M. to ask whether the person had handled some business with U.S. and B.O.A.   In addition, the author of the first message wanted to know whether a person identified with the last name of Stewart had copied and mailed some unknown materials.   Finally, G.M. was advised in the message to warn the unidentified individual not to make any moves until she spoke with him.   The second message advised that the person was on her way to handle U.S. and B.O.A., and knew not to talk or meet anyone.

13.     On April 20, 2016 and April 21, 2016, the Jennings Correctional Facility telephone service recorded calls between G.M. and **BROWN** during which the following conversations were recorded:

   (a) G.M. advises **BROWN** that **WATSON** is on lockdown, and gives her some banking
       instructions;

   (b) G.M. asked **BROWN** whether she took care of the BOA and US business;

   (c) **BROWN** says that she mailed off some items the previous evening; and,

   (d) **BROWN** informs G.M. that the BOA account may be closed because she left the
       account in the red too long.

14.     **WATSON'S** recorded telephone call to **BROWN** on April 22, 2016 informs **BROWN** that he has the banking situation under control.   He also gives **BROWN** information about obtaining money from US and fixing her Regions bank account.

4

15.   By July 25, 2016, law enforcement officials received records from Regions Bank which included documents revealing that **BROWN** opened two financial accounts at the federally insured financial institution that ended in 5297 and 1868 on February 23, 2016.   The documents also included a signature card for **JUSTICE CARTER** dated April 7, 2016 with respect to a Regions Bank checking account ending in 8560.

B.   <u>Conspiracy</u>

16.   Beginning on or about March 20, 2016 and continuing to on or about June 16, 2016, in the Eastern District of Missouri and elsewhere, the defendants,

**TAION BROWN**
**PIERRE WATSON, AND**
**JUSTICE CARTER,**

and others, known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury, to commit the following offenses against the United States:

a.   To knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain money, funds, credits, assets, securities owned by and under the custody and control of a financial institution as defined under Title 18, United States Code, Section 20, by means of materially false and fraudulent pretenses, representations and promises in violation of Title 18, United States Code, Section 1344 and

b.   To transmit and cause to be transmitted by means of wire communications in interstate commerce, any sounds and signals for the purpose of knowingly executing, and

5

attempting to execute, a scheme and artifice to defraud, and obtain money and property by means of materially false and fraudulent pretenses, representations and promises in violation of Title 18, United States Code, Section 1343.

C.    **Ways, Manner, and Means of the Conspiracy**

The ways, manner and means by which the foregoing objective of the conspiracy to commit bank fraud and wire fraud was to be accomplished included, but were not limited to, the following:

17.    The primary purpose of the conspiracy was for the defendants to fraudulently obtain money, funds, credit, and assets from Bank of America, U.S. Bank, and Regions Bank, financial institutions insured by the Federal Deposit Insurance Corporation, by opening bank accounts at Bank of America and U.S. Bank, and using an existing account at Regions Bank into which worthless checks would be deposited. The defendants disbursed from the artificially inflated accounts through cash and ATM withdrawals, writing checks, and making debit card purchases before the worthless checks were determined to be invalid by Bank of America, U.S. Bank, and Regions Bank.

18.    It was further part of the conspiracy that the conspirators including **TAION BROWN AND PIERRE WATSON** recruited **JUSTICE CARTER** and other individuals to open bank accounts and provide checks from existing accounts in exchange for payment for their participation in the scheme to defraud Bank of America, U.S. Bank, and Regions Bank.

19.    It was further part of the conspiracy that **PIERRE WATSON** instructed **TAION BROWN** to contact an individual who would sell her checks.

6

20.     It was further part of the conspiracy that **TAION BROWN** met with an unknown male at a location in the Eastern District of Missouri, and purchased three checks including a check drawn on a closed Bank of America account of D.O.

21.     It was further a part of the conspiracy that Watson would telephone Brown with instructions regarding how to defraud Bank of America, U.S. Bank, and Regions Bank, and how to disburse the proceeds of their fraudulent activity.

22.     It was further a part of the conspiracy that Brown and Justice Carter deposited checks drawn on accounts which lacked sufficient funds into various federally insured financial accounts at Bank of America, U.S. Bank, and Regions Bank in order to artificially inflate the account balances.

23.     It was further a part of the conspiracy that Brown obtained funds from the artificially inflated accounts by engaging in: counter withdrawals; drafting checks drawn on the accounts; automated teller machine transactions; and, making debit card purchases.

24.     It was further a part of the conspiracy that Brown used debit cards issued by Bank of America and U.S. Bank in order to purchase telephone services from Securus Technologies on behalf of Watson and other inmates.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2

### (Bank Fraud)

The Grand Jury further charges that the allegations set forth in paragraph A of Count 1 are restated and incorporated as if fully set forth herein.

7

B.      At all times relevant to the indictment, U.S. Bank, Bank of America, and Regions Bank

had assets insured by the Federal Deposit Insurance Corporation.


C.      **The Scheme to Defraud**

     1.      Between on or about March 20, 2016 and continuing to on or about June 16, 2016,

within the Eastern District of Missouri and elsewhere, the defendants,

**TAION BROWN**
**AND**
**PIERRE WATSON,**

being aided, abetted, counseled and induced by one another and persons known and unknown to

the Grand Jury, devised a scheme and artifice to obtain moneys, funds, and assets owned by and

under the custody and control of federally insured financial institutions by means of false and

fraudulent pretenses and representations.

     2.      The scheme and artifice to defraud was in substance as follows:

     a.      It was part of the scheme and artifice to defraud that **PIERRE WATSON**

     instructed **TAION BROWN** as to how to conduct bank transactions which would

     permit her to obtain funds drawn on accounts that lacked sufficient balances.

     b.      It was further part of the scheme and artifice to defraud that **TAION BROWN**

     **AND JUSTICE CARTER** opened checking accounts at branches of Regions Bank,

     U.S. Bank and Bank of America located in St. Louis County, Missouri with initial

     cash deposits of $25.00.

8

c.   It was further part of the scheme and artifice to defraud that **TAION BROWN** induced U.S. Bank and Bank of America to issue debit cards and personal identification numbers which would allow her to conduct automated teller machine transactions with the financial institution, and purchase goods and services.

d.   It was further part of the scheme and artifice to defraud that **TAION BROWN AND JUSTICE CARTER** induced Regions Bank, U.S. Bank and Bank of America to issue checks which would allow them to conduct financial transactions.

e.   It was further part of the scheme and artifice to defraud that **TAION BROWN** deposited checks drawn on accounts at a federally insured financial institutions with insufficient balances to support the transactions into financial accounts at other federally insured financial institutions in order to artificially inflate the balances at the depositing financial institution.

f.   It was further part of the scheme and artifice to defraud that **TAION BROWN** withdrew funds from the artificially inflated accounts through the passing of checks, counter withdrawals, automated teller machine transactions, and debit card purchases.

g.   It was further part of the scheme and artifice to defraud that **PIERRE WATSON** instructed **TAION BROWN** as to the disbursements of the proceeds of the check scheme.

D.   **The Financial Transaction**

9

3.   On or about April 2, 2016 in the Eastern District of Missouri, the defendants,

**TAION BROWN
AND
PIERRE WATSON,**

and others known and unknown to the Grand Jury, executed and attempted to execute the scheme

and artifice as set forth above, in that **TAION BROWN** deposited check number 98 drawn on

her U.S. Bank account into her Bank of America account with the intention of deceiving Bank of

America into believing that her U.S. Bank account contained sufficient funds to honor the

$200.00 check deposit when in fact the balance in her U.S. Bank account was $25.00.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT 3

(Bank Fraud)

The Grand Jury further charges that the allegations set forth in paragraph A of Count 1 and

paragraphs B and C of Count 2 are restated and incorporated as if fully set forth herein.

D.   **The Financial Transaction**

3.   On or about April 7, 2016 in the Eastern District of Missouri, the defendants,

**TAION BROWN
PIERRE WATSON,
AND
.JUSTICE CARTER,**

and others known and unknown to the Grand Jury, executed and attempted to execute the scheme

and artifice as set forth above, in that **TAION BROWN AND JUSTICE CARTER** deposited a

starter check drawn on **JUSTICE CARTER'S** Regions Bank account in the amount of

10

$1,000.00 into **TAION BROWN'S** U.S. Bank account with the intention of deceiving U.S. Bank into believing that **JUSTICE CARTER'S** Regions Bank account contained sufficient funds to honor the deposit when in fact the balance in **JUSTICE CARTER'S** Regions Bank account was $25.00.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT 4

### (Bank Fraud)

The Grand Jury further charges that the allegations set forth in paragraph A of Count 1 and paragraphs B and C of Count 2 are restated and incorporated as if fully set forth herein.

D.   **The Financial Transaction**

3.   On or about April 22, 2016 in the Eastern District of Missouri, the defendants,

**TAION BROWN**
**AND**
**PIERRE WATSON,**

and others known and unknown to the Grand Jury, executed and attempted to execute the scheme and artifice as set forth above, in that **TAION BROWN** deposited check number 1098 drawn on the closed Bank of America account of D.O. into **TAION BROWN'S** Bank of America account with the intention of deceiving Bank of America into believing that D.O.'s Bank of America account was active and contained sufficient funds to honor the $600.00 deposit.

In violation of Title 18, United States Code, Sections 1344 and 2.

11

## COUNT 5

(Aggravated Identity Theft)

The Grand Jury further charges that:

A.     The allegations set forth in paragraph A of Count 1 are restated and incorporated as if fully

set forth herein.

B.     On or about April 22, 2016, in the Eastern District of Missouri, the defendants,

**TAION BROWN**
**AND**
**PIERRE WATSON,**

and others known and unknown to the Grand Jury, did knowingly transfer, possess, and use,

without lawful authority, a means of identification of another person, to wit, name and account

number of D.O., during and in relation to the commission of the felony offenses of: bank fraud,

Title 18, United States Code, Section 1344 and wire fraud, Title 18, United States Code, Section

1343.

In violation of Title 18, United States Code, Section 1028A and 2.

A TRUE BILL.


FOREPERSON


RICHARD G. CALLAHAN
United States Attorney


TRACY LYNN BERRY - 014753 TN
Assistant United States Attorney

12